ORIGINAL

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **COMMODITY FUTURES TRADING COMMISSION,** | § | **Civil Case No. 3:02-CV-0951-K** |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | |
| | § | |
| **DEWEY V. WILES and FUTURES EXCHANGE COMPANY, INC.** | § | |
| | § | |
| **Defendants.** | § | |
| | § | |



APR 11 2003

### CONSENT ORDER OF PERMANENT INJUNCTION AND OTHER EQUITABLE RELIEF AGAINST DEFENDANT DEWEY V. WILES

On May 16, 2002, plaintiff Commodity Futures Trading Commission ("Commission") filed a Complaint against Dewey V. Wiles ("Wiles") and Futures Exchange Company, Inc. ("FEC") (collectively the "defendants") seeking injunctive and other equitable relief for violations of the Commodity Exchange Act, as amended ("Act"), 7 U.S.C. §§ 1 et seq. (2001), and Regulations promulgated thereunder, 17 C.F.R. §§ 1 et seq. (2001). The Court entered a preliminary injunction against the defendants by consent on June 19, 2002. On October 16, 2002, the Court granted a Motion For Order of Permanent Injunction and Entry of Final Judgment By Default Against Defendant FEC.

# I.

## <u>CONSENT AND AGREEMENT</u>

To effect settlement of the matters alleged in the Complaint against Wiles without a trial on the merits or any further judicial proceedings, defendant Wiles:

1.  Consents to the entry of this Consent Order of Permanent Injunction and Other Equitable Relief Against Defendant Dewey V. Wiles ("Order");

2.  Affirms that Wiles has agreed to this Order voluntarily, and that no promise or threat has been made by the Commission or any member, officer, agent or representative thereof, or by any other person, to induce consent to this Order, other than as set forth specifically herein;

3.  Acknowledges service of the Summons and Complaint;

4.  Admits jurisdiction of this Court over him and the subject matter of this action pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1;

5.  Admits that venue properly lies with this Court pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1; and

6.  Waives:

    a.  all claims which he may possess under the Equal Access to Justice Act, 5 U.S.C. § 504 (1994) and 28 U.S.C. § 2412 (1994), as amended by Pub. L. No. 104-121, §§ 231-32, 110 Stat. 862-63, and Part 148 of the Regulations, 17 C.F.R. § 148.1, <u>et seq</u>. (2001), relating to, or arising from, this action;

b. any claim of double jeopardy based upon the institution of this proceeding or the entry in this proceeding of any order imposing a civil monetary penalty or any other relief; and

c. all rights of appeal from this Order.

7.   Wiles consents to the continued jurisdiction of this Court for the purpose of enforcing the terms and conditions of this Order and for any other purposes relevant to this case.

8.   By consenting to the entry of this Order, Wiles neither admits nor denies the allegations of the Complaint and the Findings of Fact contained in this Order, except as to jurisdiction and venue.   However, Wiles agrees, and the parties to this Order intend, that the allegations of the Complaint and all of the Findings of Fact made by this Court and contained in Part II of this Order shall be taken as true and correct and be given preclusive effect without further proof in any subsequent bankruptcy proceeding filed by, on behalf of, or against Wiles, for the purpose of determining whether his restitution obligation and/or other payments ordered herein are excepted from discharge. Wiles also shall provide immediate notice of any bankruptcy filed by, on behalf of, or against him in the manner required by Part V, paragraph 1 of this Order.

## II.

## <u>FINDINGS OF FACT AND CONCLUSIONS</u>

It further appearing to this Court that there is no just reason for delay, the Court being fully advised in the premises and the Court finding that there is just cause for entry of this Order

that fully disposes of all issues in this matter, THE PARTIES AGREE AND THE COURT FINDS THAT:

1.      This Court has jurisdiction over the subject matter of this action and all parties hereto pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1, which authorizes the Commission to seek injunctive relief against any person whenever it shall appear that such person has engaged, is engaging or is about to engage in any act or practice constituting a violation of any provision of the Act or any rule, regulation or order thereunder.

2.      Venue properly lies with this Court pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1, in that the defendant is found in, inhabits, or transacts business in this district, and the acts and practices in violation of the Act have occurred, are occurring, or are about to occur within this district, among other places.

3.      Plaintiff Commodity Futures Trading Commission is an independent federal regulatory agency that is charged with responsibility for administering and enforcing the provisions of the Act, 7 U.S.C. §§ 1 *et seq.*, and the Regulations promulgated thereunder, 17 C.F.R. §§ 1 *et seq.*

4.      Defendant Dewey V. Wiles, age 81, currently resides at 4610 Chaha Road, Apartment 204, Garland, Texas 75043. Wiles formed FEC and was its sole officer. Wiles acted as an unregistered associated person ("AP") for FEC. Wiles committed the acts described in this consent order individually and as an agent of FEC. Wiles has never been registered in any capacity with the Commission.

5.      Since at least April 1998 and continuing through at least November 2001, Defendant Wiles, acting through his company, FEC, misappropriated customer funds and

made material misrepresentations and omissions while soliciting approximately $683,200 from at least 61 customers.  Wiles solicited investors to open discretionary commodity futures trading accounts by touting his ability to reap substantial profits for customers through his futures trading.  Investors and FEC entered into joint venture agreements with Wiles signing as president of FEC.

6.      Wiles received payments directly from investors.   He then deposited or directed the deposit of the funds into a bank account at Bank United of Dallas, Texas (which later became Washington Mutual Bank).  This bank account was opened in the name of his wife Leonette Foster, doing business as FEC.   Wiles wired, or caused to be wired, some of those funds from this bank account to commodity futures trading accounts that he opened at four registered futures commission merchants.  Wiles made all the trading decisions for those commodity futures accounts.

7.      During the period October 1999 through June 2001, Wiles created and mailed monthly account statements to investors.  These account statements reflected the futures trades purportedly made in the investors' accounts as well as the purported current value of their investment.

**Wiles' Fraudulent Solicitations**

8.      Wiles sent a written brochure to all prospective investors to encourage them to invest funds in futures trading accounts that he would manage.  In the brochure, Wiles represented that his trading was guided by the highly-successful "Futures 2000" computerized system that he supposedly developed in conjunction with an "outsourced" group of experts.   Wiles claimed that the system had a "powerful synergistic effect" that

could forecast and predict futures trades with "an overall accuracy between 90-95%." The brochure claimed that commodity futures trading was an excellent way for senior citizens who were facing a "down trend of economic reversal" to "jump-start" their finances after a catastrophic financial event and achieve "financial recovery." Wiles sent the brochure containing these statements to every person who indicated an interest in trading commodities through him. Wiles admits that his futures trading was not profitable overall and that his system does not have an overall accuracy level of 90-95%.

**Misrepresentation and Omissions of Futures Trading Risks**

9.      Wiles omitted certain risk disclosures in his materials. His brochure also misrepresented or omitted the risks of commodity futures trading, stating "There is nothing to FEAR about trading commodity futures and more money can be made with less capital in a shorter period of time than in any investment vehicle available." (Emphasis in original). He minimized the risks of commodity futures trading by suggesting that the trading system was a way for those with "meager funds" to make money quickly, without also advising them of the concomitant risks. He made no other disclosures related to risk in this solicitation document. Moreover, there was no reference to risk in the joint venture agreements or the monthly account statements he sent to investors.

**False Guarantees of Profits**

10.     Individuals who wished to invest with Wiles completed FEC's Joint Venture Agreement and deposited funds with FEC. Wiles guaranteed customers who entered into these Joint Venture Agreements spectacular profits. The guarantee was as follows (in the excerpt below, a "J-V" is a "joint venturer," i.e., an investor):

a. FEC hereby guarantees:

A.     J-V ONE HUNDRED PERCENT (100%) RETURN PER ANNUM on J-V's initial capital investment/s or

B.     FIFTY PERCENT (50%) OF THE NET PROFITS from the trading of the futures contracts as specified by J-V above— WHICHEVER IS GREATER.

11.     Wiles and FEC entered into agreements containing this guarantee over a period when Wiles knew that he was either sustaining net futures trading losses, or was not trading futures at all. He knew that many or most of those guarantees were not honored.

**False Written Account Statements**

12.     Wiles began trading customer funds in April 1998, but provided account statements to customers for the first time in February 1999. The account statements purported to reflect the actual futures transactions performed on behalf of investors, as well as the purported customer opening account balances, trading profits and ending account balances. These statements contained false information in that the written statements Wiles and FEC sent to customers stated that the customers were earning profits when, in fact, the trading that Wiles and FEC performed with customer funds garnered only minimal gross profits during a few months, and no net profits whatsoever. Specifically, Wiles represented to FEC investors that for the period of October 1999 through June 2001, he made trading profits in the investors' accounts when, in fact, he had incurred a net loss.

13.     Between October 1999 and June 2001, Wiles repeatedly misrepresented the trading results of the pool in the monthly statements that he sent to investors. During this period, Wiles's futures trading resulted in an investor trading loss of $42,000. In fact, Wiles traded no futures whatsoever during 14 of the 21 months in which he sent statements to investors touting trading "profits." In the seven months during which he did trade

futures, he sustained trading losses in five of those months, and made only small profits in the remaining two months.

**Misappropriation of Customer Funds**

14.     Under the terms of the Joint Venture Agreement, Defendants' only source of compensation was to be from any net profits from the futures trading conducted for customers.   Wiles made no net profits at all.  He therefore was not entitled to any of the investors' funds in the bank or trading accounts as compensation.  Moreover, Wiles had misrepresented the profit potential and risk of futures trading to induce customer to invest with FEC, and therefore, he had no legitimate claim to any of the customers' funds.

15.     Wiles withdrew more than $215,426 of customer funds, despite the fact that investors had understood that all of their funds were to be used in trading commodity futures.   Wiles used that money to pay his personal and small business expenses. Accordingly, Wiles was not entitled to use any customer funds for any purpose, and misappropriated those funds from investors.

16.     Wiles used customer funds for personal purposes.   Wiles used the misappropriated funds to pay his monthly living expenses, including mortgage, utility, and health care costs.   He also paid over $35,000 to credit card companies, and roughly $14,000 to various persons for automobiles (including payments on a BMW).   He also used the funds to pay for commodity-related periodical subscriptions, office supplies and other small business expenses.

17.     Ultimately, Wiles returned approximately $431,700 to investors as returns of equity or as false trading profits.   He favored certain customers over others when returning

money, however, causing some customers to lose disproportionately more than others relative to their initial investments.

18.     The conduct of Defendant Wiles, as set forth above, was done in or in connection with orders to make, or the making of, contracts of sale of commodities for future delivery, made, or to be made, for or on behalf of other persons where such contracts for future delivery were or may have been used for (a) hedging any transaction in interstate commerce in such commodity, or the products or byproducts thereof, or (b) determining the price basis of any transaction in interstate commerce in such commodity, or (c) delivering any such commodity sold, shipped, or received in interstate commerce for the fulfillment thereof.

## Wiles's Violations of the CEA and Commission Regulations

19.     By the conduct described in paragraphs 4 through 18, Wiles cheated or defrauded or attempted to cheat or defraud and willfully deceived or attempted to deceive investors, in violation of Section 4b(a)(i) and (iii) of the Act, 7 U.S.C. § 6b(a)(i) and (iii) (2001).

20.     By the conduct described in paragraphs 4 through 18, Wiles willfully made or caused to be made false reports or statements thereof to investors, in violation of Section 4b(a)(ii) of the Act, 7 U.S.C. § 6b(a)(ii) (2001).

21.     By the conduct described in paragraphs 4 through 18, Wiles acted as a commodity trading advisor ("CTA") or an AP of a CTA, and made use of the mails or any means or instrumentality of interstate commerce in connection therewith without the benefit of registration with the Commission, in violation of Sections 4k(3) and 4m(1) of the Act, 7 U.S.C. §§ 6k(3) and 6m(1) (2001).

22.     By the conduct described in paragraphs 4 through 18, Wiles employed a device,

scheme or artifice to defraud investors or engaged in transactions, practices or courses of

business which operated as a fraud or deceit upon investors while acting as commodity

trading advisor, or as an AP of a CTA, in violation of Section 4o(1) of the Act, 7 U.S.C.

§ 6o(1) (2001).

### III.

### ORDER

IT IS HEREBY ORDERED, ADJUDGED AND DECREED that:

1.      Defendant Wiles is permanently restrained, enjoined and prohibited from

directly or indirectly:

A.      Cheating or defrauding or attempting to cheat or defraud and
        willfully deceiving or attempting to deceive other persons in
        or in connection with any order to make, or the making of,
        any contract or sale of any commodity for future delivery,
        made, or to be made, for or on behalf of any person if such
        contract for future delivery is or may be used for (i) hedging
        any transaction in interstate commerce in such commodity or
        the products or by products thereof;  (ii) determining the
        price basis of any transaction in interstate commerce in such
        commodity; or (iii) delivering any such commodity sold,
        shipped, or received in interstate commerce for the
        fulfillment thereof, in violation of Section 4b(a)(i) and (iii)
        of the Act, 7 U.S.C. § 6b(a)(i) and (iii) (2001);

B.      Willfully making or causing to be made to such other person
        any false report or statement thereof, in violation of Section
        4b(a)(ii) of the Act, 7 U.S.C. § 6b(a)(ii) (2001);

C.      Acting as a CTA, or as an associated person of a CTA,
        without being registered as such under the Act and using the
        mails or any means or instrumentality of interstate
        commerce in connection with his business as CTA, in
        violation of Sections 4k(3) and 4m(1) of the Act, 7 U.S.C.
        §§ 6k(3) and 6m(1) (2001); and

10

D. Violating Section 4o(1) of the Act, 7 U.S.C. § 6o(1) (2001), by employing devices, schemes or artifices to defraud commodity pool participants, and engaging in transactions, practices or course of business that operate as a fraud or deceit upon commodity pool participants or prospective participants.

2. Defendant Wiles is further permanently restrained, enjoined and prohibited, from directly or indirectly:

A. trading on or subject to the rules of any registered entity, as that term is defined in Section 1a(29) of the Act, as amended by the CFMA, 7 U.S.C. § 1a(29) (2001);

B. soliciting, receiving, or accepting any funds in connection with the purchase or sale of any commodity futures contract or option on a futures contract;

C. engaging in, controlling, or directing the trading of any commodity futures, security futures or options accounts for or on behalf of any other person or entity, whether by power of attorney or otherwise; and

D. applying for registration or claiming exemption from registration with the Commission in any capacity, and engaging in any activity requiring such registration or exemption from registration with the Commission, except as provided for in Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9)(2001), or acting as a principal, agent, officer or employee of any person registered, required to be registered, or exempted from registration, except as provided for in Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9)(2001). This includes, but is not limited to, soliciting, accepting, or receiving any funds, revenue or other property from any other person, giving commodity trading advice for compensation except as provided in Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9)(2001), or soliciting prospective customers related to the purchase or sale of commodity futures or options on commodity futures contracts;

E. filing a petition in bankruptcy without providing this Court and the Commission with prompt notice by Certified Mail of such filing.

3.      The injunctive provisions of this Order shall be binding on Defendant Wiles, upon any person insofar as he or she is acting in the capacity of officer, agent, servant, employee or attorney of Wiles, and upon any person who receives actual notice of this Order by personal service or otherwise insofar as he or she is acting in active concert or participation with Wiles.

## IV.

## ORDER FOR OTHER EQUITABLE RELIEF

IT IS FURTHER ORDERED THAT:

1.      RESTITUTION:  Defendant Wiles shall pay restitution in the amount of $369,374.50 plus pre-judgment interest thereon from May 6, 2002 to the date of this Order in the amount of $ 16,254.05 as of April 3, 2003 Pre-judgment interest is to be calculated at the underpayment rate established by the Internal Revenue Service, pursuant to 26 U.S.C. § 662(a)(2).  Interest after the date of this Order until the restitution is paid in full shall be paid at the post-judgment interest rate set forth in 28 U.S.C. § 1961, assessed pursuant to paragraph IV. 2.f., below, of the payment plan.  Attachment A, attached hereto, includes the names and last known addresses of the investors to whom restitution shall be made pursuant to this paragraph, together with the amount of restitution payable by Wiles to each of them (not including required interest) and the pro-rata distribution percentage by which each investor shall be paid.  Omission from Attachment A shall in no way limit any investor from seeking recovery from Wiles, FEC or any other person or entity.  Further, the amounts contained in Attachment A shall not limit the ability of any investor from

proving that a greater amount is owed, and nothing herein shall be construed in any way to limit or abridge the rights of any investor that exist under state or common law.

2.    <u>PAYMENT OF RESTITUTION</u>: Restitution shall be made as follows:

      a.    The balance of funds held in the Court's Registry shall be distributed to investors in accordance with Attachment A. Such distribution shall reduce Wiles's restitution obligation to investors on a dollar-for-dollar basis.

      b.    Wiles agrees that the National Futures Association is hereby designated as the Monitor for a period of eleven years commencing January 1, 2003. Notice to the Monitor shall be made to Daniel A. Driscoll, Esq., Executive Vice President, Chief Compliance Officer, or his successor, at the following address: National Futures Association, 200 West Madison Street, Chicago, IL 60606.

      c.    Wiles shall make an annual restitution payment ("Annual Restitution Payment") according to the payment plan outlined in paragraph IV. 4., below, to an account designated by the Monitor of: a percentage of his adjusted gross income (as defined by the Internal Revenue Code) earned or received by him during the previous calendar year, plus (2) all other cash receipts, cash entitlements or proceeds of non-cash assets received by him during the previous calendar year. The Annual Restitution Payment shall be made on or before July 31 of each calendar year, starting in calendar year 2003 and continuing for ten years or until his restitution amount is paid in full from any source, whichever occurs sooner. The ten year restitution period shall run from January 1, 2003 through December 31, 2012. Restitution payments for a calendar year shall take place by July 31 of the following year. Therefore, the final restitution payment for the year 2012 will occur on or before July 31, 2013.

      d.    Wiles shall provide a sworn financial statement pursuant to 28 U.S.C. § 1746 to the Monitor twice a year for ten years, starting on June 30 and December 31 of each calendar year, starting June 30, 2003 and continuing through and including December 31, 2012. The financial statement shall provide:

            i). a true and complete itemization of all of his rights, title and interest in (or claimed in) any asset, wherever, however and by whomever held;

ii). an itemization, description and explanation of all transfers of assets with a value of $1,000 or more made by or on behalf of him over the preceding six-month interval; and

iii). a detailed description of the source and amount of all his income or earnings, however generated.

Wiles shall also provide the Monitor with complete copies of his signed federal income tax returns, including all schedules and attachments thereto (e.g., IRS Forms W-2) and Forms 1099, as well as any filings he is required to submit to any state tax or revenue authority, on or before June 30 of each calendar year, or as soon thereafter, beginning in 2003 and ending in 2013. If he moves his residence at any time he shall provide written notice of his new address to the Monitor and the Commission, through the Director or his successor, Division of Enforcement, Commodity Futures Trading Commission, at 1155 21st Street, N.W., Washington, DC 20181, within ten calendar (10) days thereof.

e.      If, during the same time period, Wiles elects to file a joint tax return, he shall provide all documents called for by this paragraph 2, including the signed and filed joint tax return, plus a draft individual tax return prepared on IRS Form 1040 containing a certification by a licensed certified public accountant that the "Income" section (currently lines 7-22 of Form 1040) truly, accurately and completely reflects all of Wiles' income, that the "Adjusted Gross Income" section truly, accurately and completely identifies all deductions that Wiles has a right to claim, and that the deductions contained in the "Adjusted Gross Income" section are equal to or less than 50% or the deductions that Wiles is entitled to claim on the joint tax return; provided however that Wiles may claim 100% of the deductions contained in the "Adjusted Gross Income" section that are solely his. Such individual tax return shall include all schedules and attachments thereto (e.g., IRS Forms W-2) and Forms 1099, as well as any filing required to be submitted to any state tax or revenue authority.

f.      Based on the information contained in Wiles's tax returns, Wiles's sworn Financial Disclosures Statement and other financial records provided to the Commission, the Monitor shall calculate the Annual Restitution Payment to be paid by Wiles for that year and the specific amounts payable to each investor. On or before June 30 of each year and starting in calendar year 2003, the Monitor shall send written notice to Wiles with instructions to pay the Annual Restitution

Payment on or before July 31 of that year to an account designated by the Monitor, or if Wiles's restitution obligation has been satisfied, the amount of civil monetary penalty to be paid in accordance with the payment instructions in Paragraph IV. 3. and 4., below.  If the Monitor determines that an Annual Restitution Payment is due, then the Monitor will increase the amount of the remaining restitution payment by post-judgment interest calculated to the date of the payment based on the total remaining restitution obligation, pursuant to 28 U.S.C. § 1961. The Monitor shall then disburse any payment by Wiles to the investors in the appropriate amounts listed on Attachment A.  Based upon the amount of funds available, the Monitor may decide to defer distribution.  If at the end of the ten year payment period, any amount of the Annual Restitution Payments has not been distributed, that amount shall instead be paid and applied as a payment to the civil monetary penalty obligation, as provided in paragraphs IV. 3. and 4., below.

3.    <u>CIVIL MONETARY PENALTY</u>:  Wiles shall pay a contingent civil monetary penalty of $646,278.96 pursuant to the payment plan outlined in paragraph IV. 4., below, commencing upon Wiles's fulfillment of his total restitution obligation as set forth in paragraphs IV. 1. and 2., above.  Wiles shall make an annual civil monetary penalty payment ("Annual CMP Payment") following Wiles's satisfaction or other discharge of his restitution obligation, and continuing until December 31, 2013 (or until the civil monetary penalty is paid in full, if that happens first).[1]  Wiles shall make each such Annual CMP Payment by electronic funds transfer, or by U.S. postal money order, certified check, bank cashier's check, or bank money order, made payable to the Commodity Futures Trading Commission, and sent to Dennese Posey, or her successor, Division of Enforcement, Commodity Futures Trading Commission, Three Lafayette

---

[1]  Should the amount due under the payment plan for any Annual Restitution Payment be greater than the balance due on Wiles's restitution obligation, the amount due under the payment plan not paid as restitution will constitute Wiles's first Annual CMP Payment and be paid as specified above.

Centre, 1155 21st Street, N.W., Washington, DC 20581, under cover of a letter that

identifies Wiles and the name and docket number of the proceeding; Wiles shall

simultaneously transmit a copy of the cover letter and the form of payment to the

Monitor and to the Director, or his successor, Division of Enforcement, Commodity

Futures Trading Commission, at the following address: 1155 21st Street, NW,

Washington, DC 20581.

4.    ANNUAL PAYMENT:  The Annual Payment (the Annual Restitution

Payments and the contingent Annual Civil Monetary Penalty Payments for Wiles after his

full restitution obligation has been satisfied) shall be calculated as follows:

| a. | Where Adjusted Gross Income Plus Net Cash Receipts Total: | Percent of total to be paid by Wiles is: |
|---|---|---|
| | Under $25,000 | 0% |
| | $25,000 up to and including $50,000 | 20% of the amount between $25,000 and $50,000 |
| | $50,000 up to and including $100,000 | $5,000 (20% of $25,000) plus 30% of the amount between $50,000 and $100,000 |
| | Above $100,000 | $20,000 (20% of $25,000 plus 30% of 50,000) plus 40% of the amount above $100,000 |

b.    Wiles shall cooperate fully and expeditiously with the Monitor and
the Commission in carrying out all duties with respect to the
restitution and civil monetary penalty payments.  He will cooperate
fully with the Monitor and the Commission in explaining his financial
income and earnings, status of assets, financial statements, asset
transfers and tax returns, and shall provide any information
concerning himself as may be required by the Commission and/or the
Monitor.  Furthermore, Wiles shall provide such additional

16

information and documents with respect thereto as may be requested by the Commission and/or the Monitor.

5.   THIRD-PARTY BENEFICIARIES:  Pursuant to Rule 71 of the Federal Rules of Civil Procedure, each of the individuals identified in Attachment A is explicitly made an intended third-party beneficiary of this Order and may seek to enforce obedience of this Order to obtain satisfaction of any portion of the restitution amount which has not been paid by Wiles, to ensure continued compliance with any provision of this Order and to hold Wiles in contempt for any violations of any provision of this Order.

6.   COLLATERAL AGREEMENTS:  Wiles shall immediately notify the Commission if he makes or has previously made any agreement with any investor obligating him to make payments outside of this Order.  Wiles shall also provide immediate evidence to the Court, to the Monitor, and to the Commission of any payments made pursuant to such agreement.  Upon being notified of any payments made by Wiles to investors outside of this Order, and receiving evidence of such payments, the Commission will have the right to reduce and offset Wiles's obligation to specified investors, on an annual basis, and to make any other changes in the restitution distribution schedule that they deem appropriate.

7.   TRANSFER OF ASSETS:  Wiles shall not transfer or cause others to transfer funds or other property to the custody, possession, or control of any other person for the purpose of concealing such funds from the Court, the Commission, the Monitor or any investor or until the Restitution Amounts have been paid in full.

8.    DEFAULT:  Any failure by Wiles to carry out any of the terms, conditions or obligations under any paragraph of this Order shall constitute an Event of Default.  If any Event of Default occurs the Commission (or its designee) shall be entitled to:

    a.    an order requiring immediate payment of any unpaid Annual Restitution Payments and/or CMP Payments, or, at the Commission's option, the entire unpaid balance, or any unpaid portion, of the restitution amount and/or civil monetary penalty set forth above in paragraphs IV.1. through 4., above; and/or

    b.    move the Court for imposition of all other available remedies, including, but not limited to, an order holding Wiles in contempt for violation of this Order.

Upon the occurrence of an Event of Default based upon a claim or cause of action that Wiles failed to file complete and timely financial information with the Monitor as specified in the Order, or that Wiles failed to make any Annual Restitution Payments and/or Annual CMP Payments when due, Wiles will be barred from asserting any defense, including expiration of any statute of limitations, waiver, estoppel or laches, where such defense is based on the alleged failure of the Commission to pursue such claims or causes of action during the pendency of this civil action, during the negotiation of Wiles's consent to this Order or while this Order remains in effect.  The only issue that Wiles may raise in defense is whether he complied with the financial reporting requirements or made the Annual Restitution Payments and/or Annual CMP Payments as directed by the Monitor. Any motion by the Commission for entry of an order pursuant to this paragraph requiring

payment of less than the full amount of the restitution and/or civil monetary penalty, set forth in paragraphs IV.1. through 4., above, or any acceptance by the Commission of partial payment of the Annual Restitution Payments and/or Annual CMP Payments made by Wiles shall not be deemed a waiver of the Commission's right to require Wiles to make further payments pursuant to the payment plans set forth above, or, in the event of a further Event of Default, a waiver of the Commission's right to require immediate payment of the entire remaining balance, or any unpaid portion, of the restitution amount and/or civil monetary penalty set forth in paragraphs IV.1. through 4., above.

9.     Based upon Wiles's sworn representations in his Financial Disclosure Statement dated January 9, 2002, during his August 29, 2002 testimony and other evidence provided by Wiles to the Commission regarding his financial condition, the Court is not ordering immediate payment of the entire restitution obligation and civil monetary penalty. The determination not to require immediate payment of the entire restitution obligation and civil monetary penalty is contingent upon the accuracy and completeness of Wiles's Financial Disclosure Statement and other evidence provided by Wiles regarding his financial condition.  If at any time following the entry of this Order, the plaintiff Commission obtains information indicating that Wiles's representations to the Commission concerning his financial condition were fraudulent, misleading, inaccurate or incomplete in any material respect as of the time such representations were made, the Commission may move this Court for an order requiring Wiles to make immediate payment of his entire restitution obligation and/or civil monetary penalty, or of any portion thereof, the amount of which shall be determine by the Commission.  In connection with

any such motion, the only issues shall be whether the financial information provided by Wiles was fraudulent, misleading, inaccurate or incomplete in any material respect as of the time such representations were made.  In its motion, the Commission may move this Court to consider all available remedies, including, but not limited to, ordering Wiles to pay funds or transfer assets or directing the forfeiture of any assets, and the Commission may also request additional discovery.  Wiles may not, by way of defense to such motion, challenge the validity of his consent or this Order, or contest any of the findings of fact or conclusions of law set forth in this Order, assert that payment of restitution and/or a civil monetary penalty should not be ordered, or contest the amount of the restitution or civil monetary penalty to be paid.  If in such motion the Commission moves for, and the Court orders, payment of less than the full amount of the restitution obligation or the full amount of civil monetary penalty, such motion will not be deemed a waiver of the Commission's right to require Wiles to make further payment pursuant to the payment plans set forth above.

## V.

## MISCELLANEOUS PROVISIONS

A.    NOTICES.  All notices required by this Order shall be sent by certified mail, return receipt requested, as follows:

      a.    Notice to Commission

           Director, Division of Enforcement
           Commodity Futures Trading Commission
           1155 21st St. NW
           Washington, DC 20581

      b.    Notice to the Monitor:

Vice President, Compliance
National Futures Association
200 West Madison Street
Chicago, IL 60606

c.     Notice to defendant Wiles

Dewey V. Wiles
4610 Chaha Road, 204
Garland, Texas 75043

B.     <u>ENTIRE AGREEMENT, AMENDMENTS and SEVERABILITY</u>.  This
Order incorporates all of the terms and conditions of the settlement among the parties.
Nothing shall serve to amend or modify this Order in any respect whatsoever, unless:
(1) reduced to writing, (2) signed by all parties, and (3) approved by order of the Court.  If
any provision of this Order or the application of any provision or circumstance is held
invalid, the remainder of this Order shall not be affected by the holding.

C.     <u>PUBLIC STATEMENTS</u>.  By consenting to the entry of the Order attached
hereto, Wiles agrees that neither he nor any of his agents or employees under his authority
and control shall take any action or make any public statement denying, directly or
indirectly, any allegation in the Complaint or finding in the Order or creating, or tending to
create the impression that the Complaint or the Order is without a factual basis; provided,
however, that nothing in this provision shall affect his: (i) testimonial obligations; or
(ii) right to take legal positions in other proceedings to which the Commission is not a
party. Wiles shall take all steps necessary to ensure that his agents and employees comply
with this provision.

D.   <u>SUCCESSORS AND ASSIGNS</u>.   This Order shall inure to the benefit of and be binding on the parties' successors, assigns, heirs, beneficiaries and administrators.

E.   <u>JURISDICTION</u>.   This Court shall retain jurisdiction of this cause to assure compliance with this Order and for all other purposes related to this action.

There being no just reason for delay, the Clerk of the Court is hereby directed to enter this Consent Order of Permanent Injunction and Other Equitable Relief Against Dewey V. Wiles.

Done and ordered on this _11th_ day of _April_, 2003.

_____
UNITED STATES DISTRICT COURT JUDGE

Consented to and
approved for entry by:

_____
Dewey V. Wiles, *pro se*
Dated: _3/21/2003_

_ghassan Hitti_   Date: 4/1/2003
Ghassan Hitti [ghitti@cftc.gov]
Trial Attorney
Division of Enforcement Commodity
Futures Trading Commission
Three Lafayette Centre
1155 21st Street, N.W.
Washington, D.C. 20581
202.418.5000 (telephone)
202.418.5538 (facsimile)


Local Counsel:


JANE J. BOYLE
United States Attorney

Paula M. Billingsley
Assistant United States Attorney

United States Attorney's Office for the
  Northern District of Texas
1100 Commerce Street, Suite 300
Dallas, Texas  75242-1699
(214) 659-8600

# Attachment A

CFTC v. Wiles
3:02-CV-0951-K

| Customer Name | Address | Pro-rata Distrubution | Distribution of the $25,000 in Court's Registry |
|---|---|---|---|
| Adair, Barbara | 1307 Hampshire Lane Richardson, Texas 75080 | 13.7221% | $3,430.54 |
| Beasley, Sonia Rita | c/o Beira Metcalf 3557 Timberglen Road, Suite 172, Dallas, Texas 75287 | 0.0686% | $17.15 |
| C and J Engineering, James Horton | 828 Chadwick Pl. Richardson, Texas 75090-1825 | 0.8233% | $205.83 |
| Chadbourne, Jack | 2940 Whitley Road Wylie, TX 75098 | 1.6467% | $411.66 |
| Davis, Glen | 2001 Coit Road – Suite #134 Plano, Texas 75075 | 4.1166% | $1,029.16 |
| Deiken, Richard | 201 Eskota Cs., Mabank, Texas 75147 | 0.5489% | $137.22 |
| Evans, Patsy | 104 Lojolla Maybank, TX 75147 | 2.2987% | $574.68 |
| Gravis, Lee | 9001 Markville Drive- Apt. # 912 Dallas Texas 75243-9370 | 0.4391% | $109.78 |
| Hinson, Roger | 4101 Canal Court, Arlington, Texas 76016 | 8.2333% | $2,058.32 |
| Hunter, John | 5212-B Melbourne Drive Ft. Worth Texas 76114-3907 | 5.7633% | $1,440.83 |
| Jackson, Susan | c/o Debra Pixton 2649 Pagoda Drive, Clearwater, Florida 33764 | 0.5489% | $137.22 |
| Janus, Frank | 737 Amberton Parkway -- #1056 Dallas, Texas 75243 | 0.2744% | $68.61 |
| Janus, Pat | 16351 Lauder Lane Dallas, Texas 75248 | 3.2919% | $822.99 |
| Kahle, Joyce | 709 Cambridge Drive Richardson, Texas 75080 | 0.2744% | $68.61 |
| Kennedy, Aloma | 800 Brazos, Suite # 340, Austin, TX 78701 | 2.7444% | $686.11 |
| King, Hazel | 2138 Sierra Drive Grapevine, Texas 76051 | 2.7444% | $686.11 |

## Attachment A

CFTC v. Wiles
3:02-CV-0951-K

| Customer Name | Address | Pro-rata Distrubution | Distribution of the $25,000 in Court's Registry |
|---|---|---|---|
| Lockhart, Ronald | 112 Whippoorwill Way, Georgetown, TX 78628-4823 | 0.8233% | $205.83 |
| Lockhart, Stan | 112 West Hamtramck St. Mt. Vernon, Ohio 43050-1356 | 1.9211% | $480.28 |
| Logan, Melvin | 115 Cumberland Drive Ovilla, Texas 75154 | 1.3722% | $343.05 |
| Logan, Otis | 115 Cumberland Drive Ovilla, Texas 75154 | 13.7221% | $3,430.54 |
| McCarty, Vera | 3624 Highland Ranch Parkway – Suite # 105 Highlands Ranch, Colorado 80126 | 1.9211% | $480.28 |
| Metcalf, Beira | 3557 Timberglen Road, Suite 172, Dallas, Texas 75287 | 2.7444% | $686.11 |
| Moore, Wesley | 799 Poor Valley Road Rogersville, TN 38857 | 0.5176% | $129.40 |
| Nelson, Patricia | 8545 Midpark Road – Apt. 61 Dallas, TX 75240 | 0.5489% | $137.22 |
| Nguyen, Thanh | 2602 Springlake Drive Richardson, TX 75085 | 7.3757% | $1,843.91 |
| Perez, Luis | 1021 Bellflower Carrollton, TX 75007 | 7.4100% | $1,852.49 |
| Pixton, Debra aka Debra Briley | 2649 Pagoda Drive, Clearwater, Florida 33764 | 1.3722% | $343.05 |
| Rachael, Ann | PO Box # 180695 Dallas, TX 75218 | 0.8233% | $205.83 |
| Riddle, Pat | 1403 Tanglewood Trail Euless, TX 76040 | 7.1492% | $1,787.31 |
| Rodriguez, Delfin | Infinite Venures, Inc. 16295 Country Road 605 Farmersville, TX 75442 | 1.0408% | $260.21 |
| Tatum, Paul | 12312 Cedar Bend Drive Dallas, TX 75244 | 1.4271% | $356.78 |

# Attachment A

CFTC v. Wiles
3:02-CV-0951-K

| Customer Name | Address | Pro-rata Distrubution | Distribution of the $25,000 in Court's Registry |
|---|---|---|---|
| Toepfer, Sylvia | c/o Beira Metcalf 3557 Timberglen Road, Suite 172, Dallas, Texas 75287 | 0.2058% | $51.46 |
| Tullis, Roy | PO Box 1196--- 506 Ash Street Plainview, Texas 79073 | 0.8233% | $205.83 |
| Warren, Gregory | 1003 Bellcrest Drive Arlington, TX 76002 | 0.4391% | $109.78 |
| Yamini, Bruce | 9126 Valley Chapel Dallas, TX 75220 | 0.8233% | $205.83 |
| | Total = | 100.0000% | $25,000.00 |